# EXHIBIT 1

**UTAH LABOR COMMISSION**
**ADJUDICATION DIVISION**
Heber M Wells Building,
P O Box 146615
Salt Lake City UT 84114
(801) 530-6800

| | |
|---|---|
| **KEMING LU,**<br>  Petitioner,<br><br>vs.<br><br>**ST. MARK'S HOSPITAL,**<br>  Respondent. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**<br><br>Case No. 8090160<br><br>Judge Todd Newman |

**HEARING:** On April 29th and 30th, 2021, Labor Commission, 160 E 300 S, PO Box 146615, Salt Lake City, UT 84114-6615. The Hearing was remotely held via Google Meet.

**BEFORE:** Hon. Joshua Decker, Administrative Law Judge.

**APPEARANCES:** Petitioner Keming Lu was present and appeared pro se (self-represented).

Respondent St. Mark's Hospital was represented by attorneys Lisa Hogan and Nicholas R. Santucci.

**WITNESSES:** Keming Lu, Tonna St. Thomas, Jonathan Hancock and Jillian Pitre.

### I. STATEMENT OF THE CASE

Keming Lu ("Petitioner") asserted claims of discrimination (national origin and race), harassment (national origin and race) and retaliation, all in violation of the Utah Antidiscrimination Act. Petitioner claimed that she and others of her same or similar race and/or national origin were treated less favorably than employees that did not belong to her race and/or national origin. Petitioner specifically requested the following relief: job reinstatement, benefits, back pay, legal fees and interest, among other things. Petitioner's Statement, p. 2.

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 2
_____

St. Mark's Hospital ("Respondent") filed its Answer in which it asserted that Petitioner's employment termination was based upon legitimate, non-discriminatory reasons. Respondent claimed that Petitioner had several performance issues in 2017and 2018. These issues included: taking a lunch break whenever she desired, resulting in other employees missing their lunch breaks; choosing which ultrasound scans to perform; passing off patients in the middle of care so that she could leave at the end of her shift; and leaving the ultrasound scanner on floors. Respondent stated that Petitioner refused to take accountability for her own actions. Respondent terminated Petitioner's employment after discovering that she was sleeping on the job in August 2018. Respondent asserted Petitioner's termination was not retaliatory because Petitioner could not show a causal connection between any protected activity and the adverse action.

## II. COURSE OF PROCEEDINGS

The Court held an evidentiary hearing on April 29th and 30th of 2021. On August 5, 2021, the matter was reassigned to Judge Todd Newman. Judge Newman observed and listened to the entire evidentiary hearing recording, which included more than 12 hours of presentation of witnesses' testimonies and discussion of and admission of parties' exhibits. After listening to the complete hearing recording, Judge Newman reviewed the admitted evidence as well as the parties' respective written closing arguments and rebuttal closing arguments.

### A. Petitioner's Post-Hearing Submission of Evidence

On May 28, 2021, Respondent filed an objection to Petitioner's submission of evidence after the conclusion of the hearing. Respondent objected to Petitioner's "Third Supplemental Disclosures" which contained several recordings. Respondent asserted it was unable to listen to the recordings and that the recordings Petitioner produced did not match the lengths of the recordings discussed in the cover email of her motion. Respondent argued that no good cause exists for allowing the admissibility of Petitioner's late-submitted exhibits and cited Utah Admin. Rule R602-7-3(1)(d)(i)(A)(I)(bb) and U.R.C.P. 26(d)(4) in support of its position.

Petitioner filed a response to Respondent's objection on June 9, 2021. Petitioner asserted that she had good cause and that Respondent merely refused to allow the evidence to be admitted. Petitioner asserted that there are legal grounds supporting the admissibility of her late-submitted exhibits. Respondent did not reply to Petitioner's response. Therefore, Respondent's objection is ready for a decision.

As a matter of due process and in the interest of procedural fairness, the Court finds that allowing the submission of Petitioner's post-hearing exhibits, or the contents of

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 3
_____

Petitioner's "Third Supplemental Disclosures" would be inherently unfair to Respondent, who presently cannot review its contents. Moreover, it would be unusual at this stage of proceedings to permit the admission of any exhibits after the evidentiary record has closed. The Court finds U.R.C.P. 26(d)(4) to be both instructive and persuasive regarding the admissibility of evidence not previously disclosed. U.R.C.P. 26(d)(4) reads: "If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." Thus, because Petitioner failed to previously disclose to Respondent the evidence in the "Third Supplemental Disclosures", and Petitioner failed to demonstrate good cause, the Court finds the "Third Supplemental Disclosures" should not be admitted into evidence. Furthermore, the Court was not persuaded by the various points of Petitioner's argument as to why such evidence should be admissible as she did not cite any specific legal precedent to support her position. And Petitioner has not shown that the admission of the "Third Supplemental Disclosures" would be harmless. Based on the foregoing, the Court shall grant Respondent's objection to Petitioner's post-hearing submission of evidence, and the contents of Petitioner's "Third Supplemental Disclosures" shall not be admitted into evidence.

**B. Petitioner's Concern about the Hearing Recording**

On August 5, 2021, Petitioner sent an email to the Court expressing concern that the hearing recording may be missing portions of the hearing. While reviewing the entire hearing recording, the Court was unable to discern any portion of the recording which was omitted. The Court found that it was able to fully review both parties' presentation of evidence, including all exhibits and testimony admitted into the record. Thus, the Court found no issues with the hearing recording.

### III. ISSUES

1. Did Respondent subject Petitioner to unlawful discrimination in violation of the Utah Antidiscrimination Act?

2. Did Respondent subject Petitioner to unlawful harassment?

3. Did Respondent unlawfully retaliate against Petitioner?

### IV. FINDINGS OF FACT

1. St. Mark's Hospital ("Respondent") employed Keming Lu ("Petitioner") as an ultrasound technologist. Petitioner worked for Respondent for

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 4
_____

approximately 21 years. As an ultrasound technologist, Petitioner was required to "perform a variety of examinations that often require independent judgment…[and] [d]emonstrate the ability to obtain and interpret information in terms of the patient's needs[.]" Respondent's Exhibit 19, p. 2. Furthermore, Petitioner was expected to receive "general guidance and direction by the Assistant Director or Department Director…[and] to perform most job duties independently and in accordance with established departmental and hospital policies and procedures." Respondent's Exhibit 19, p. 3.

2. Tonna St. Thomas worked as the Director of Radiology at St. Mark's Hospital from 2004 to June 2020. While Ms. St. Thomas was the Director of Radiology, Jillian Pitre was a manager who reported directly to Ms. St. Thomas. Certain coordinators reported directly to Ms. Pitre, including Natosha Davis, who was the ultrasound coordinator.

3. On June 7, 2017, Petitioner performed an abdominal ultrasound for a patient. The corresponding ultrasound medical note indicated the patient's gallbladder had been removed, there were "no gallstones" and "No gallbladder wall thickening or sonographic Murphy's sign[.]" Petitioner's Exhibits, A1 and A2. Petitioner asserted that she performed this ultrasound correctly and that her supervisor, Jillian Pitre, incorrectly instructed her to measure the patient's kidney differently. Petitioner admitted that she did not want to talk to the radiologist about this particular issue and explained her refusal to speak with the radiologist was because she did not want to cause any confusion. Despite Petitioner's assertion that she performed the ultrasound correctly, the Court finds that Petitioner did not perform the imaging order correctly and failed to follow protocol. Respondent's Exhibit 1. The Court gave greater weight to Respondent's evidence on this matter based on the detailed testimony of Respondent's witnesses and the documentation.

4. On August 11, 2017, Petitioner met with Ms. Pitre to discuss the scheduling needs of the department. Petitioner was the senior member of the team and requested a former employee's work shift. Ms. Pitre allegedly informed Petitioner that she would have to work every Saturday, not just every other Saturday. Petitioner responded that she did not want to work every Saturday.

5. Petitioner admitted that after the August 11, 2017, meeting with Ms. Pitre, she called Natosha Davis, the radiology coordinator, while Ms. Davis was out on maternity leave. Petitioner did not deny that Ms. Pitre specifically instructed her to not contact Ms. Davis while she was on maternity leave and

Case 2:22-cv-00602-BSJ-DAO   Document 7-1   Filed 11/22/22   PageID.42   Page 5 of 16

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 5
_____

admitted that she violated this instruction. Petitioner asserted that Ms. Davis is a coworker and Petitioner was unaware that there was a rule or policy that forbade her from contacting Ms. Davis. After Petitioner called Ms. Davis, Ms. Pitre contacted Petitioner and rebuked her. Petitioner stated that after this incident, Respondent accused her of failing to fulfill the department's needs. Respondent also refused to give Petitioner the specific shift she requested.

6. On August 17, 2017, Petitioner met with Ms. Pitre, human resources and Ms. St. Thomas to discuss Petitioner's schedule. Ms. Pitre and Ms. St. Thomas explained to Petitioner that they can only change her schedule based on the needs of the department.

7. In February 2018, ultrasound staff members complained to Ms. Pitre about four issues: (1) Petitioner freely took a lunch break whenever she wished, causing other staff members to miss their lunch breaks; (2) Petitioner was not "pulling her weight" in performing patient scans; (3) Petitioner was passing off patients to other staff members in the middle of patient care; and (4) Petitioner left ultrasound scanners on the floor, resulting in other staff members having to retrieve the ultrasound scanners during patient care. Petitioner's Exhibit B2. These complaints were memorialized in an email prepared by Ms. Pitre. Petitioner's Exhibit C2. Petitioner denied that her lunch breaks affected other staff members. Petitioner also asserted that she "pulled her weight" because she performed the patient scans that she was asked to perform. Petitioner denied passing off patients in the middle of care. Petitioner also denied leaving ultrasound scanners on the floors and asserted she would leave the scanners for the next ultrasound technologist. Petitioner asserted that she maintained a peaceful, cooperative relationship with her coworkers. However, the Court finds that Petitioner did commit the four issues complained of by staff members. Petitioner did not provide any evidence, beyond her own testimony, to support her position that these incidents did not occur. The Court gave greater weight to Respondent's evidence documenting these incidents because they were more detailed and were consistent with the testimonies of Ms. St. Thomas and Ms. Pitre

8. In May 2018, Petitioner was accused of leaving a Labor and Delivery patient in the hall and telling the patient she would have to wait for her scan from another ultrasound tech because Petitioner's shift had ended. Petitioner's Exhibit B2. Petitioner denied working on May 10, 2018 or May 20, 2018 and asserted that there is no written policy that patients should not be left in the hallway. This assertion is supported by Respondent's statement in a Response to Request for Interrogatories. Petitioner's Exhibit M1 – M2.

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 6
_____

> Although there is no policy that patients should not be left in the hallway, the Court finds a preponderance of the evidence shows that Respondent instructed its staff to remain with the patients and to not abandon them.

9. Ms. Pitre and Ms. Davis met with Petitioner to discuss the incident of leaving the patient in the hallway. Petitioner refused to accept accountability for her actions and complained the staff treated her differently due to her race.

10. Respondent accused Petitioner of delaying patient care on May 20, 2018, when she requested to see a patient's driver's license because the patient's middle name was not in Respondent's record system. Petitioner's Exhibit B2. Regarding this particular incident, Petitioner claimed that it is Respondent's policy to enter the patient's name in Respondent's record system based on the patient's driver's license information. Petitioner denied that she was delaying patient care and claimed the patient never told her they felt uncomfortable. The Court finds that Petitioner did delay patient care in this instance, although it was not intentional. Again, Petitioner could not corroborate her testimony regarding this event with any substantive documents and thus, the Court assigned greater weight to Respondent's evidence based on the consistency of the evidence and the testimonies of Respondent's witnesses.

11. In her in-court testimony, Petitioner asserted that another employee referred to her as "LuLu" and "Sunshine". However Petitioner did not testify whether these remarks were offensive or based on her national origin and race. In fact, in her letter to Tyler Whitacre, Petitioner stated: "She gave me the nickname LuLu, called me sunshine and sent text to me while saying that I was amazing [sic] person and a friend." Respondent's Exhibit 29, p. 4. Thus, it is not clear whether these nicknames form the basis of Petitioner's harassment complaint. Based on the context of her letter to Whitacre, Petitioner may have been describing her amicable relationship with this coworker. A staff member complained that Petitioner "just exists". Petitioner's Exhibit C2.

12. On July 27, 2018, Petitioner attended a meeting with Ms. Davis and Ms. Pitre regarding a complaint that a STAT patient had to wait over 2 hours to be scanned. Petitioner asserted that Ms. Davis and Ms. Pitre admonished her for delaying patient care and they refused to believe anything she said.

13. Ms. St. Thomas issued to Petitioner a Disciplinary/Corrective Action Form which included the following language: "Over the past three months, Keming received multiple complaints from patients as well as departments in the hospital. These complaints have demonstrated a pattern of poor

Case 2:22-cv-00602-BSJ-DAO   Document 7-1   Filed 11/22/22   PageID.44   Page 7 of 16

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 7
_____

    communication that has caused delays in needed patient care being provided." Petitioner's Exhibit K1. Ms. Pitre signed this disciplinary form on August 3, 2018. Petitioner's Exhibit K2.

14. On August 3, 2018, Petitioner sent a text to Ms. Davis in which she stated: "Tosha, it has been a week since I requested a meeting with you and Jill again to tell you both what I found, which was (were) different than you and Jill presented in the first meeting on July 27. But I haven't heard from you about what time we can meet again. Do you have a timeline? Thank you!" Petitioner's Exhibit I1. Ms. Davis texted in reply that she is waiting for Jill and instructed Petitioner to speak with Jill on Friday or wait until Ms. Davis returned on the following Friday. Petitioner's Exhibit I2.

15. In August 2018, Petitioner contacted HR and PBX (Respondent's phone system) to request phone recordings and to request that a disciplinary action form be removed from her file.

16. On August 10, 2018, Petitioner met with Ms. Davis and Ms. Pitre and complained of racial harassment and discrimination.

17. On August 15, 2018, Petitioner sent an email requesting a copy of the complaints and the write up. Respondent's Exhibit 1. Ms. St. Thomas responded to Petitioner's email and stated: "At this time Keming we are done with this issue. You have met with H.R. and talked about your issues. We need to stop the e-mails and focus on our work and our excellent patient care." Petitioner's Exhibit F1.

18. There is a factual dispute regarding the circumstances of August 17, 2018. Ms. Pitre asserted that on August 17, 2018, she discovered Petitioner asleep in a room. Petitioner denied that she was asleep when Ms. Pitre found her and stated that she merely closed her eyes for a short period of time. The Court assigned greater weight to Ms. Pitre's testimony because of the specific details she provided in her in-court testimony regarding the incident. The Court assigned less weight to Petitioner's testimony because she did not provide sufficient explanation or details as to why she was sitting in the corner of the ultrasound room. Based on the foregoing, the Court finds the following events occurred: on August 17, 2018, Ms. Pitre was unable to access a room because both doors were locked. Ms. Pitre went back to her office to determine if any patients were scheduled to be seen. Upon reviewing the information, Ms. Pitre found that no patients were being seen. Ms. Pitre unlocked the doors to the room and found Petitioner sitting down. Ms. Pitre informed Petitioner that the door should remain unlocked. Ms. Pitre then left

Case 2:22-cv-00602-BSJ-DAO Document 7-1 Filed 11/22/22 PageID.45 Page 8 of 16

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 8
_____

and did some payroll work. Ms. Pitre then went back to the room and found Petitioner sitting in the corner, with her arms crossed. Ms. Pitre observed Petitioner's eyes were closed and that she was sleeping. Petitioner woke up while Ms. Pitre was in the room. Thus, the Court finds that Petitioner was sleeping in the room on August 17, 2018.

19. On August 22, 2018, Petitioner sent an email to Mr. Hancock in which she stated: "I told you that I would hold my hopes high expecting someone will have fair mind and just attitude to take my concerns fairly and justly. Certainly you are not the one. So I need to report this to a higher authority which can deal with issue carefully and justly." Petitioner's Exhibit H.

20. On August 28, 2018, Jon Hancock sent an email to Ms. St. Thomas in which he stated: "I think if we find a staff member sleeping on the job it is at minimum a final written warning if not immediate termination. Given the other concerns we have had with Keming, I have no problem recommending termination in this case." Petitioner's Exhibit O3.

21. Ms. St. Thomas decided to terminate Petitioner's employment. On August 30, 2018, Respondent issued to Petitioner a termination form stating that her employment was terminated due to sleeping in the control room while on duty. Petitioner asserted discrimination on this termination form. Petitioner's Exhibit L. This termination form was issued to Petitioner the same day that she met with Jon Hancock.

22. Respondent has a policy regarding discipline, counseling and corrective action. The policy specifically reads: "A serious offense may result in immediate termination of employment and includes…sleeping while on duty or giving the appearance of such[.]" Petitioner's Exhibits P, Q2.

23. Petitioner wrote a 17-page letter to Tyler Whitacre in which she explained her side of the employment incidents that led up to her termination. Respondent's Exhibit 29. In this letter Petitioner asserted, among other things, that Respondent gave favorable treatment to Caucasian employees and that she was treated less favorably because of her Asian status. Specifically, Petitioner stated that Respondent treated her more harshly regarding disciplinary matters and that Respondent was more lenient with Caucasian employees. Petitioner asserted that Ms. Breckon Carlton failed to timely perform an ultrasound scan and that Ms. St. Thomas told Ms. Carlton that she was not at fault for this incident. Petitioner asserted that under similar circumstances, management found her at fault and blamed her for failing to timely perform a scan of a Labor & Delivery patient.

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 9
_____

24. Petitioner claimed that Respondent shorted her pay after she worked overtime and that Respondent failed to pay her for a certain shift. Petitioner asserted that this pay issue did not happen to other employees. However, Petitioner did not provide any evidence to support her assertion that Respondent failed to pay her earned wages. Therefore, the Court finds that Petitioner did not sufficiently show that Respondent failed to pay her earned wages.

25. Following the termination of Petitioner's employment, Respondent hired an individual named Helen Yu to replace Petitioner. Helen Yu is of Asian descent.

26. Other employees have been terminated for sleeping on the job. Since 2018, Respondent has terminated four employees, excluding Petitioner, for sleeping on the job. All four of these terminated individuals were White.

27. Mr. Hancock reviewed Respondent's racial demographics of its employees and made the following observations: (1) from January 2017 to February 2020, there were 184 involuntary terminations; (2) of the 184 terminations, 9 involved Asian employees, or 4.8% of all terminations; and (3) of the 184 terminations, 150 involved White employees. Mr. Hancock and Ms. St. Thomas denied that Petitioner's race or national origin were a motivating factor in the decision to terminate Petitioner's employment.

## V. CONCLUSIONS OF LAW

### A. Claim for Discrimination Based on National Origin and Race

Utah law makes discrimination against an employee on the basis of national origin and race illegal. Specifically, Utah Code Ann. §34A-5-106 states:

> (1) It is a discriminatory or prohibited employment practice to take any action described in subsections (1)(a) through (f).
>
> > (a)(i) An employer may not refuse to hire, promote, discharge, demote, or terminate any person, or to retaliate against, harass, or discriminate in matters of compensation or in terms, privileges, and conditions of employment against any person otherwise qualified, because of: race . . . [and] national origin[.]

The prima facie case for a disparate treatment theory of employment discrimination is slightly different for each case depending on the basis of discrimination and the

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 10
_____

particular adverse action alleged. However the core elements are as follows: 1) Petitioner belongs to a protected class; 2) Petitioner was subjected to an adverse employment action; and 3) there is a causal connection between the protected class and the adverse action. Once the employee has established her prima facie case, the burden to produce evidence shifts to the employer who must articulate a legitimate, nondiscriminatory reason for its suspect conduct. If the employer succeeds in rebutting the inference of discrimination, the burden of production shifts back to the employee who must then show by a preponderance of the evidence that the employer's articulated reasons were merely a pretext for discrimination. However, the ultimate burden of persuasion that the employer discriminated against the employee "remains at all times with the plaintiff." *Sheikh v. Department of Public Safety*, 904 P.2d 1103, 1106 (Utah Ct. App. 1995). See also *University of Utah v. Industrial Commission*, 736 P.2d 630, 635 (1987), and *Viktron/Lika v. Wright*, 2001 UT App. 394, ¶8.

With regards, then, to Petitioner's case, the framework for analysis is as follows:

### 1. Protected Class

Petitioner is of Asian descent and belongs to protected classes (race and national origin) which differ from those of her coworkers. Thus, Petitioner belongs to the protected classes asserted and has established the first element of her claim.

### 2. Adverse Employment Action

Petitioner must next show that she was subject to an adverse employment action. Petitioner was subject to an adverse action when Respondent terminated her employment on August 30, 2018. Thus, Petitioner has established the second element of her prima facie case.

### 3. Causal Connection

Petitioner must then show a causal connection between her protected classes and the termination. For the reasons discussed below, the Court concludes that Petitioner cannot establish a causal connection between her protected classes at issue and her termination. There is no evidence of any discriminatory animus or inference regarding Petitioner's termination. The evidence clearly shows that Respondent was motivated by Petitioner's performance and behavior issues, including unsatisfactory patient care, inability to accept accountability and sleeping on the job, when it decided to terminate her employment. There is simply no evidence that Ms. St. Thomas, Ms. Pitre or Mr. Hancock were somehow motivated by Petitioner's race and national origin when Respondent terminated her

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 11
_____

employment. Respondent hired an employee of Asian descent to take Petitioner's vacant position, which negated any alleged discriminatory motive directed towards Petitioner's national origin or race. Furthermore, over the past few years, Respondent has terminated four individuals, who did not belong to Petitioner's protected classes, for the same reason that Petitioner was terminated: sleeping on the job. Therefore, based on the foregoing discussion, Petitioner has not established her prima facie case of discrimination and the Court shall dismiss this claim with prejudice.

## B. Claim for Harassment

Utah law makes harassment against an employee on the basis of national origin and race illegal. Specifically, Utah Code Ann. § 34A-5-106 states:

> (1) It is a discriminatory or prohibited employment practice to take any action described in subsections (1)(a) through (f).
>
> > (a)(i) An employer may not . . . harass, because of . . . race . . . [and] national origin[.]

In order to prevail on a claim of harassment, a petitioner must prove the following elements: (1) she was harassed because of her race and national origin; (2) the harassment was objectively and subjectively offensive and unwelcome; and (3) the harassment was sufficiently severe or pervasive as to alter the terms, conditions or privileges of employment. *Dick v. Phone Directories Co.*, Inc., 397 F.3d 1256, 1262-63 (10th Cir. 2005).

Regarding Petitioner's harassment claim, the framework for analysis is as follows:

### 1. Conduct Based on Race and National Origin

Petitioner must first prove that she was subjected to conduct based on her race and national origin. In the hearing, Petitioner was unable to provide any specific examples of conduct based on her race and national origin. However, Petitioner did assert that other coworkers referred to her as "Lulu" and "Sunshine." In her testimony, Petitioner did not expound on how these nicknames were based on her race and national origin. The issue is more confusing because in Petitioner's letter to Mr. Whitacre, she described these nicknames as terms of endearment from a coworker. Respondent's Exhibit 29. This Court is not in a position to speculate vague evidence. There is simply no other evidence of conduct that is based on Petitioner's national origin or race. Although another employee complained that Petitioner "just exists," there is insufficient evidence that this remark was based on

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 12
_____

her race or national origin. Petitioner's superiors admonished her for certain incidents, however, there is no evidence these admonishments were motivated by her national origin or race. Based on the foregoing, the Court concludes that Petitioner could not establish the first element of her prima facie case of harassment. Nevertheless, the Court finds, for the purpose of completion, that a coworker's act in referring to Petitioner as "Lulu" is based on her race and national origin because it is a variation of her surname. Thus, Petitioner has established the first element of her prima facie case of harassment.

### 2. The Harassment was Objectively and Subjectively Offensive and Unwelcome

Petitioner must then show that the harassment was objectively and subjectively offensive and unwelcome. Based on Respondent's Exhibit 29, it appears that Petitioner did not take offense to the nickname "LuLu." However, for the purpose of this analysis, the Court shall assume that Petitioner found the nickname to be offensive. The Court concludes the nickname "Lulu" was objectively and subjectively offensive and unwelcome. Thus, Petitioner has established the second element of her harassment claim.

### 3. The Harassment was Sufficiently Severe or Pervasive to Alter the Terms, Conditions or Privileges of Employment

Finally, Petitioner must establish that the harassment was sufficiently severe or pervasive. To be actionable, harassment must be "so severe or pervasive as to alter the conditions of [Petitioner's] employment and create an abusive working environment." *Clark County School Board District v. Breeden,* 532 U.S. 268, 270 (2001). In determining whether that is the case here, this Court must consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 270-71 (citations and internal quotation marks omitted). Thus, "'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Id*. at 271 (quoting *Faragher v. City of Boca Raton*, 524 U.S. at 788 (1998). *Accord Darvish*, 2012 UT App 68, ¶36. Petitioner did not discuss how often coworkers teased her or referred to her as "Lulu." Moreover, Petitioner did not provide any evidence that the offensive conduct was sufficiently severe as to alter the terms, conditions or privileges of her employment. Petitioner did not indicate the frequency of the offensive conduct, whether the conduct was physically threatening or humiliating and whether the conduct in question interfered with her work performance. Therefore, the Court concludes that Petitioner cannot establish

Case 2:22-cv-00602-BSJ-DAO   Document 7-1   Filed 11/22/22   PageID.50   Page 13 of 16

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 13
_____

her prima facie case of harassment. As such, the Court shall dismiss the harassment claim with prejudice.

## C. Claim for Retaliation

To establish a prima facie claim for retaliation, Petitioner must present evidence of three things: 1) that she engaged in protected activity; 2) that she suffered an adverse employment action; and 3) a close causal link exists between the two. If, but only if the petitioner can do all this, the burden shifts to the employer to present proof that it took the adverse action against the petitioner for a legitimate, non-retaliatory reason. If the employer succeeds at that, the burden shifts back to Petitioner to show the employer's stated reasons are pretextual. See *Viktron/Lika*, 2001 UT App 394, ¶6; *Barrett v. Salt Lake County*, 754 F.3d 864, 866-867 (10th Cir. Utah 2014).

Thus, the framework of Petitioner's retaliation claim is set forth below:

### 1. Petitioner Engaged in a Protected Activity

Petitioner engaged in the following protected activities: (1) in May 2018, Petitioner complained to management that the staff members were treating her differently because of her race; and (2) on August 10, 2018, Petitioner complained of racial harassment and discrimination to Ms. Davis and Ms. Pitre. Therefore, Petitioner has established the first element of her prima facie case of retaliation.

### 2. Petitioner Suffered an Adverse Employment Action

As stated earlier, Petitioner was subject to an adverse employment action when Respondent terminated her employment on August 30, 2018. Petitioner has established the second element of her prima facie case of retaliation.

### 3. Causal Connection

Finally, Petitioner must show a causal connection between her protected activities and her employment termination. Given the short time period between her latest complaint on August 10, 2018, and her termination on August 30, 2018, the Court finds that Petitioner has established a prima facie case of retaliation. The Court finds the three-month period between the May 2018 protected activity and the termination to be too remote to show a causal connection.

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 14
_____

### 4. Legitimate, Non-Retaliatory Reason

The burden then shifts to Respondent to show a legitimate, non-retaliatory reason for Petitioner's termination. *Viktron/Lika*, 2001 UT App. 394, ¶7. Respondent has met its burden by proffering evidence that it terminated Petitioner because she was sleeping on the job. Respondent, therefore, has satisfied its burden to show a legitimate, non-retaliatory reason for terminating Petitioner's employment.

### 5. Pretext

The burden now shifts back to Petitioner to present evidence that Respondent's reason for her termination was a pretext for retaliation. To demonstrate pretext, a plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." The Tenth Circuit has repeatedly cautioned that Title VII does not transform the court into a "super personnel department." A court's role "isn't to ask whether the employer's decision was wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs." Accordingly, an employee must "produce evidence that the employer did more than get it wrong [and] must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." *Bertsch v. Overstock.com*, 2014 U.S. Dist. LEXIS 165159, 47-48 (D. Utah Nov. 24, 2014), quoting *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). In other words, the Petitioner must "demonstrate[e] that the employer's explanation for its decision was so implausible, incoherent, or internally contradictory that the decision *must* have been made on some other basis." *Kunej*, 2013 UT App. 172, ¶6 (emphasis in original).

A plaintiff may make a showing of pretext by presenting "(1) evidence that defendant's stated reason for the adverse employment action was false; (2) evidence that the defendant acted contrary to a written . . . policy prescribing the action to be taken by the defendant under the circumstances; or (3) evidence that the defendant acted contrary to an unwritten policy or contrary to [the employer's] practice when making the adverse employment decision affecting the plaintiff." *Bertsch v. Overstock.com*, 2014 U.S. Dist. LEXIS 165159, 48-49 (D. Utah Nov. 24, 2014) (quoting *Miller v. Auto. Club of New Mexico, Inc.*, 420 F.3d 1098, 1123 (10th Cir. 2005)) (requiring courts to evaluate facts from the perspective of the person who made the adverse action, as opposed to the aggrieved employee, when evaluating the truth of the employer's belief).

Findings of Fact, Conclusions of Law and Order
Keming Lu vs. St. Mark's Hospital
Case No. 8090160
Page 15
_____

Petitioner was unable to show that Respondent's stated reason for terminating her employment was false or that it acted contrary to its written policy. Respondent's policy asserted that "sleeping on the job" is clearly a serious offense which can result in termination. Moreover, Respondent presented evidence that it terminated four other individuals for sleeping on the job. No evidence was presented showing that any of these individuals ever complained of discrimination. Therefore, Petitioner cannot establish pretext. Based on the foregoing analysis, the Court shall dismiss Petitioner's retaliation claim with prejudice.

## ORDER

**IT IS THEREFORE ORDERED** that Keming Lu's request for de novo review, including her claims of discrimination, harassment and retaliation are hereby dismissed with prejudice.

DATED this 23rd day of August, 2021.

_____
Hon. Todd Newman
Administrative Law Judge

## NOTICE OF APPEAL RIGHTS

A party aggrieved by the decision may file a Motion for Review with the Adjudication Division of the Utah Labor Commission.  The Motion for Review must set forth the specific basis for review and must be received by the Commission within 30 days from the date this decision is signed.  If a request for review is filed, other parties to the adjudicative proceeding may file a response within 15 calendar days of the date the request for review was filed.  If such a response is filed, the party filing the original request for review may reply within 5 calendar days of the date the response was filed.

Any party may request that the Appeals Board of the Utah Labor Commission conduct the foregoing review.  Such request must be included in the party's Motion for Review or its response.  If none of the parties specifically request review by the Appeals Board, the review will be conducted by the Utah Labor Commissioner.

Keming Lu vs. St Mark's Hospital
Case No. 8090160

## CERTIFICATE OF MAILING

I hereby certify that a true and correct copy of the attached Findings of Fact, Conclusions of Law, and Order, was mailed on August 23, 2021, to the persons/parties at the following addresses:

Keming Lu
4531 Green Vista Court
Murray UT 84107
kemingxj@yahoo.com

St Mark's Hospital
c/o lhogan@bhfs.com,kmeade@bhfs.com

Lisa Hogan
lhogan@bhfs.com,kmeade@bhfs.com

Kirsten R Allen
kallen@fabianvancott.com

Nicholas R Santucci
nsantucci@bhfs.com

Kendra L. Shirey
kshirey@utah.gov

UTAH LABOR COMMISSION

*Kyrie Butler*

Clerk
Adjudication Division