# EXHIBIT 5

# IN THE SUPREME COURT OF THE UNITED STATES

---

### KEMING LU

Petitioner,

v.

### NORTHERN UTAH HEALTHCARE CORPORATION D.B.A. ST. MARK'S HOSPITAL

Respondent.

---

*On Petition For Writ of Certiorari to the Utah Supreme Court*

---

### **PETITION FOR WRIT OF CERTIORARI**

---

Keming Lu, Pro Se
4531 S. Green Vista Court
Salt Lake City, Utah 84107
(801) 205-4084
kemingxj@yahoo.com

# I. QUESTIONS PRESENTED

Petitioner, Keming Lu, an Asian Chinese, worked as an Ultrasound Technologist at St. Mark's Hospital for 21 years and was wrongfully terminated on August 30, 2018 for so-alleged sleeping while on duty on August 17, 2018. Petitioner filed a complaint alleging unlawful discrimination based on her race and national origin along with harassment and retaliation with Utah Labor Commission in February 2019 pursuant to Title VII of Civil Rights of Act of 1964 and The Utah Anti-discrimination Act of 1965, since Petitioner formally raised the issue of racial discrimination with Human Resources on August 10, 2018 and reported it to the hospital COO Mr. McKinley on August 23, 2018, then termination of the employment ensued a week later for an alleged incident on August 17, 2018.  An evidentiary hearing was held on April 29- 30 2021. At hearing Respondent suddenly changed Its original account of so-called sleeping incident which was answered by Respondent in Interrogatory ( Appendix A ) into a totally different account of that event ( Appendix B ). In Response to Interrogatory No 2,  It stated: *"On August 17, 2018, in the early afternoon, Ms. Pitre attempted to enter the ultrasound control room to retrieve documents, when she discovered that the two doors to the room were locked. After confirming that there were no patients in the rooms, Ms. Pitre unlocked the doors and found Petitioner sitting in the corner of the room, asleep, with her arms crossed and her head bowed. As Ms. Pitre entered the room, Petitioner awoke and stared at Ms. Pitre. Ms. Pitre told Petitioner that she was not allowed to keep the doors locked. Petitioner responded that she had been taking naps on the job for years and no one ever said anything. At that point, Ms. Pitre retrieved the documents she needed and left the control room."* Yet at hearing Ms. Pitre testified that the first time she came to ultrasound, the doors were locked. Ms. Pitre unlocked the door and told Petitioner the door need remain unlocked and grabbed the payroll book and left. There was no conversation. The second time she come back, the door was not locked. She found Petitioner sleeping, and she put the payroll book back to the wall holder to make a noise to wake Petitioner up. This sudden change of account of the event caught Petitioner off guard. Not only Petitioner's prepared testimony could not be given but also she couldn't remember what Respondent was referring to at hearing since the incident was two years and eight months ago at the time of hearing. So Petitioner could not give her testimony on the suddenly changed version of the incident presented by Respondent at that moment in hearing but recalled later. So Petitioner first requested, then filed a Motion with Utah Court of Appeals to

transfer the case to district court for a trial of de novo, so Petitioner could give her testimony on that event which was the only event for her termination on August 30, 2018 ( Appendix C, Appendix D ). But Petitioner's request and motion were not granted. Petitioner then filed Petition for Writ of Certiorari with the Utah Supreme Court, which was denied on August 15, 2022 without any reason given ( Appendix E ).

The Questions Presented:

1). Was it a violation of Petitioner's constitutional rights guaranteed by the 5th and 7th amendments when Petitioner's petition for a trial of de novo to testify for herself was denied after Respondent's sudden change of testimony on the accused event offered by Respondent to justify Petitioner's termination?

2). When Petitioner's constitutional rights granted by the 5th and 7th amendments to testify for herself were deprived after Respondent changed its testimony, was it a violation of due process guaranteed by the14th amendment to deny Petitioner's rights to be heard on the only purported event used by Respondent to support her termination?

## II.TABLE OF CONTENTS

I.   QUESTIONS PRESENTED ....................................................................Page 2-3

II.  TABLE OF CONTENTS ,,,,,,....................................................................Page 4-6

III. TABLE OF AUTHORITIES....................................................................Page 7

          Cases...............................................................................Page 23-24

               (1). United States v. Gillenwater, 717 F. 3d 1070 ( 9th Cir. 2013)

               (2). United States v. Vargas, 920 F. 2d 167 ( 2d Cir.1990

               (3). Nichols v. Butler, 953  F. 2d 1550 ( 11th Cir. 1992 )

               (4). Willer v. Committee on Character, 373 U.S. 96 (1963)

          Statutes...........................................................................Page 2,4-5,7-9,16, 23

               28 U. S. C. § 1257(a).

               42 United States Code Section 1983

               Title VII of Civil Rights of Act of 1964

               The Utah Anti-discrimination Act of 1965

          Constitution....................................................................Page 3-5, 7-9, 23, 25

               US Constitution, 5th Amendment

               US Constitution, 7th Amendment

               US Constitution, 14th Amendment

IV.  PETITION FOR WRIT OF CERTIORARI...................................................Page 8

V.   OPINIONS BELOW............................................................................Page 8

VI.  JURISDICTION................................................................................Page 8

VII.  CONSTITUTIONAL PROVISIONS AND STATUTES INVOLVED....................Page 2-5,7-9,16, 23, 25

US Constitution, 5th Amendment

US Constitution, 7th Amendment

US Constitution, 14th Amendment

28 U. S. C. § 1257(a).

42 United States Code Section 1983

Title VII of Civil Rights of Act of 1964

The Utah Anti-discrimination Act of 1965

VIII.  STATEMENT OF THE CASE ...............................................................Page 10-22

1). Incidents At St. Mark's Hospital Leading Up To This Legal Proceeding

2). Litigation With Utah Labor Commission

3). Appeal To Utah Court of Appeals

4). Petition With Utah Supreme Court

IX.  REASONS FOR GRANTING THE WRIT..................................................Page 22-25

1). It Was Respondent's Fault Due To Its Dishonesty And Inconsistency

2). Petitioner's Testimony On The Accused Sleeping Incident Would Ultimately Change

The Outcome Of The Case

3). Constitution Guarantees Petitioner's Rights

4). The Following Case Laws All Support Petitioner's Right To Testify For Herself

5). This Court Has The Ultimate Authority And Jurisdiction To Guarantee The

Integrity Of The Constitution And Due Process And People's Rights

6). This Case Has National Importance

X.   CONCLUSION...............................................................................Page 25-26

XI.  APPENDICES

Appendix  A.  Answer by Ms. Pitre in Interrogatory on sleeping incident

Appendix  B.  Transcript of testimony by Ms. Pitre in hearing on sleeping incident

Appendix  C.  Signed termination form showing the only reason was sleeping

Appendix  D.  Transcript of the conversation between Mr. Hancock and Petitioner at
termination meeting to confirm the only reason for termination was
so-called sleeping

Appendix  E.  Utah Supreme Court's Order on August 15, 2022

Appendix  F.  ORDER issued by Utah Court of Appeals on May 10, 2022

Appendix  G.  Ms. Davis's text message to Petitioner on August 3, 2018 stating that she
was not in the hospital on that day

Appendix  H.  Petitioner's email on August 15, 2018 to Ms. Pitre requesting write-up

Appendix  I.  The write-up received by Petitioner from Ms.Pitre on August 15, 2018
without Ms. Pitre's signature

Appendix  J.  Utah Labor Commission changed the fact to Ms. St.Thomas who issued
the written warning on August 3, 2018

Appendix  K.  Transcript of testimony by  Ms. Pitre  that she and Ms. Davis issued the
written warning on August 3, 2018

Appendix  L.  Write-up produced after Petitioner filed the complaint with Utah Labor
Commission with the added signature of Ms. Pitre

Appendix  M.  Respondent's Response to Petitioner's Motion filed on May 4, 2022

Appendix  N.  REMITTITTUR issued by Utah Court of Appeals on May 20, 2022

## III.TABLE OF AUTHORITIES

### CASES

(1). United States v. Gillenwater, 717 F. 3d 1070 ( 9th Cir. 2013)

(2). United States v. Vargas, 920 F. 2d 167 ( 2d Cir.1990 )

(3). Nichols v. Butler, 953  F. 2d 1550 ( 11th Cir. 1992 )

(4). Willner v. Committee on Character, 373 U.S. 96 (1963)

### STATUTES

28 U. S. C. § 1257(a).

42 United States Code Section 1983

Title VII of Civil Rights of Act of 1964

The Utah Anti-discrimination Act of 1965

### CONSTITUTIONAL PROVISIONS

US Constitution, 5th Amendment

US Constitution, 7th Amendment

US Constitution, 14th Amendment

## IV. PETITION FOR WRIT OF CERTIORARI

Keming Lu petitions the Court for a writ of certiorari to review the judgment of Utah Supreme Court.

## V. OPINIONS BELOW

There were no published opinions by the Utah Supreme Court and the Utah Court of Appeals. The Utah Supreme Court's ORDER on August 15, 2022 attached as Appendix E.  The Utah Court of Appeals's ORDER on May 10, 2022 attached as Appendix F.

## VI. JURISDICTION

The Utah Supreme Court entered judgment on August 15, 2022.

Appendix E.  This petition is timely filed pursuant to Supreme Court Rule 13.1.

This Court has jurisdiction under 28 U. S. C. § 1257(a).

## VII. CONSTITUTIONAL PROVISIONS AND STATUES

i). US Constitution, 5th Amendment:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due

process of law; nor shall private property be taken for public use, without just compensation.

ii). US Constitution, 7th Amendment
In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

iii). US Constitution, 14th Amendment (Section 1.)

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

iv). 42 United States Code Section 1983

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## VIII. STATEMENT OF THE CASE

1). INCIDENTS AT ST. MARK'S HOSPITAL LEADING UP TO THIS LEGAL

PROCEEDING

Petitioner, Keming Lu, was an Ultrasound Technologist at St. Mark's

Hospital, the Respondent, for 21 years before she was terminated on August 30,

2018 for the only one so-called sleeping incident on August 17, 2018 because of

the retaliation and discrimination of Respondent.

Before August 30, 2018, Respondent blamed Petitioner for two incidents

happened with department of Labor & Delivery ( it will be referred as L&D

hereafter ), which were not faults of Petitioner. In May 2018 the manager of the

radiology department, Ms. Jillian Pitre, and Ultrasound Coordinator, Ms.

Natosha Davis, called Petitioner to the radiology conference room to ask

Petitioner if Petitioner had told an L&D patient that the night shift Ultrasound

Technologist would take her back to her room while parking the patient in the

hallway after ultrasound. Petitioner was kind of shocked at the same time feeling

strange about the question. Yet Petitioner answered the question " no, no body

in ultrasound would say that. I would not say that even in my dream". Because If

L&D was busy and had no person available to take their patients back, we as

Ultrasound Technologists would. Then Ms. Pitre said that she would discard the

10

complaint.  Because L&D had complained that the patient was wheeled back by her husband and met an L&D personnel who was on her way to pick the patient up half way. The fact was that when Petitioner was parking the patient in the hallway after ultrasound, Petitioner told the patient " I will call them to take you back", because it was L&D that brought the patient to ultrasound as a daily practice. Then Petitioner called L&D and told them that the patient was ready to go back as usual.

In July 27, 2018, Mr. Pitre and Ms. Davis asked Petitioner to meet in radiology conference room again saying that there was an L&D patient who didn't get done on time. Ms. Davis presented the timeline she had found in the computer from Petitioner's work, blaming Petitioner had about twenty minutes to do the patient but did nothing in that twenty minutes. Petitioner told them " I was not that kind of a person who knew there was an exam ordered but would not do the exam by just sitting there and doing nothing, heaven watches. I could be on the phone with a nurse on the floor asking how to order ultrasound.  Anything was possible. I didn't remember what I did in that twenty minutes since that was a week ago". I said that I would update them when I found out what was going on.  Petitioner also told them in the meeting that Petitioner had an ER ( Emergency Room ) patient ordered when Petitioner was about to do the L&D

patient, then called L&D.  L&D gave Petitioner okay to do the ER patient first and agreed to let the night shift person do their patient. Ms. Pitre said "I will not take (or believe ) all excuses that you are telling me here any more, I am going to put the previous complaint back". Later she said it again "I won't take (or believe) all the craps any more, I am going to put it back." meaning the previously discarded complaint from L&D in May back into Petitioner's file.  Petitioner told them that they could not do that because it was discarded.  But nothing could stop Ms. Pitre from what she was going to do. Petitioner felt humiliated and helpless. In Petitioner's entire life, that was the first time that Petitioner tasted what was like when you didn't have the basic right to protect yourself and the other party had all the power and rights to do whatever they wanted. Petitioner's mouth was completely dry and shaking inside. Petitioner walked out of the conference room feeling very bad and dehumanized.

After the meeting,  Petitioner went back to ultrasound and checked the pictures that she took and found out that Ms. Davis had gotten the time wrong. The patient's exam ending time Ms. Davis presented was actually the exam starting time. That twenty minutes Ms. Davis claimed that Petitioner could have done that L&D patient was actually the time when Petitioner was scanning a patient. Petitioner called Ms. Davis immediately and asked her to check the

pictures Petitioner took by herself. At the same time Petitioner asked to meet both of them again to tell them what Petitioner had found, so both of them would not have any confusion about the fact. Petitioner followed up by sending a text to Ms. Davis on August 3, 2018, which was a Friday, to check what time the three of us could meet again. Ms. Davis texted back saying that she was not at the hospital on that day and would text Ms. Pitre to keep a space open for us next Friday. ( Appendix G ).

On August 10, 2018, which was next Friday, Petitioner met with Ms. Valerie Swartz of HR and Ms. Pitre and Ms. Davis at Human Resources arranged by Respondent instead of just meeting Ms. Pitre and Ms. Davis at radiology department as Petitioner requested. Petitioner went to the meeting because Petitioner had been waiting for about two weeks to meet Ms. Pitre again since the meeting of July 27, 2018. In the meeting, Petitioner presented the findings and further explained the reasons and situations. But three of them didn't take anything from what Petitioner had said, insisting that it was Petitioner's fault. Ms. Pitre told Petitioner that she had already filed a write-up with Human Resources. Petitioner was surprised, because Petitioner had not met her again to tell Petitioner's finding yet. Ms. Swartz told Petitioner " it's been done, it's been done, nothing is going to change, if it makes you to feel better to talk

about it, you can keep talking about it, but nothing is going to change."

Petitioner said " it is not making me feel better, it's about my job safety, next

time you will say ' this is the third complaint, you're terminated'." Petitioner saw

what they had done to her prior and the things they were saying to her at the

meeting, Petitioner formally raised the issue to them,  saying " this is a racial

harassment and discrimination, I will report this to a higher authority." Then

Ms.Valerie Swartz said " go ahead, if you want to contact a lawyer or whatever,

you do it".  When Petitioner barely walked out of the room, Petitioner expressed

a good wish by saying " I hope we can have a peaceful relationship while I am

doing this."

   On August 15, 2018, Petitioner requested the filed write-up from Ms. Pitre

to see what she had written ( Appendix H ), which Ms. Pitre emailed it to

Petitioner on the same day. To Petitioner's surprise, Ms. Pitre illegally marked

an "X" in the box on the form for Petitioner without Petitioner's

acknowledgment, permission or awareness, indicating that Petitioner had

chosen not to sign the form which Petitioner didn't know and see at all. There

was no hand-written date or words or signature of any person on the form

( Appendix I )

   On August 16, 2018,  Petitioner went to Mr. Jon Hancock's office in Human

Resources to check if Ms. Pitre had filed other write-ups on Petitioner without Petitioner's awareness. At that time, Petitioner briefly told Mr. Hancock what had happened to Petitioner regarding that two incidents of L&D. He emailed Petitioner on August 20, 2018 saying that we don't leave patients alone but to remain with the patients, which was not the case with the whole radiology department at all. Every Radiology Technologist and every Ultrasound Technologist every day left patients alone in the hallway waiting for transports to take them back to their rooms,  but this could not be done by Petitioner. This was a black and white different treatment from Caucasian technologists in the radiology department and ultrasound division by Respondent. There was no mentioning of the second incident with L&D by Mr. Jon Hancock.

 Petitioner reported the racial harassment and discrimination to the hospital COO Mr. Brian McKinley on August 23, 2018. Then Petitioner was fired on August 30, 2018 for so-called sleeping while on duty on August 17, 2018, which was a week after Petitioner reported the racial harassment and discrimination to the hospital COO.

In the termination meeting on August 30, 2018, Petitioner was only told one thing which was the so-called sleeping. Respondent did not mention any of the two incidents with L&D, so Petitioner asked if the sleeping was the only

reason for the termination, and Mr. Hancock of Human Resources answered yes. Petitioner further confirmed by stating that there is nothing to do with the two prior incidents. Mr. Jon Hancock again answered no. ( Appendix D )

## 2). LITIGATION WITH UTAH LABOR COMMISSION

In February of 2019, Petitioner filed a complaint of unlawful discrimination based on her race and national origin along with harassment and retaliation with Utah Labor Commission pursuant to Title VII of Civil Rights of Act of 1964 and The Utah Anti-discrimination Act of 1965. After Petitioner's filing, Respondent responded with a list of wrongdoing by Petitioner, which Respondent alleged leading to the termination. A lot of the allegations Petitioner never knew or heard about. Some of them even brought chills to Petitioner when she was reading it the very first time.

On April 29-30, 2022, an Evidentiary Hearing was held. Respondent's testimony in hearing on Petitioner's sleeping while on duty was suddenly changed to a totally different account than the answer given on Interrogatory as Petitioner described in Questions Presented. Petitioner then couldn't remember what Respondent was referring to in hearing but Petitioner did prove that Respondent had given false testimonies under oath in Affidavit and in hearing

and lied in many occasions with supporting documents and testimony. Petitioner also proved in hearing that no written warning was issued to Petitioner on August 3, 2018 by Ms. Pitre together with Ms. Davis as Ms. Pitre testified since Ms. Davis was not at the hospital on that day ( Appendix G ). Labor Commission prejudicially sided with Respondent to let Ms. Petri go free of giving false testimony under oath by changing the fact that it was Ms. St. Thomas who issued Petitioner a written warning on August 3, 2018 ( Appendix J ), even though Ms. Pitre herself testified otherwise ( Appendix K ) and the latter added signature on the form ( Appendix L ) which was produced after Petitioner had filed the complaint with Utah Labor Commission in February 2019 was Ms. Pitre's signature. Such unfairness demonstrated by Utah Labor Commission was shocking to Petitioner and not acceptable. This had detrimental effect on the case outcome. Because Ms. Petri's credibility of the changed testimony on the so-called sleeping incident was not undermined by Petitioner's argument, just the opposite, her changed testimony on the very sleeping incident was adopted by the court.

The Utah Labor Commission not only changed this fact but also changed other facts. Respondent originally alleged that Petitioner met with Ms. Pitre, Ms. St.Thomas and Human Resources on August 18, 2017 regarding weekend shift.

Petitioner stated that she didn't work on that day at all since it was Petitioner's birthday. Then judge Newman changed it to Aug 17, 2017 to still give all the weight on the fact to Respondent. After Petitioner pointed out this change, the Appeals Board of the Utah Labor Commission falsely created a new event stating that Petitioner had met with Ms. Pitre, Ms. St Thomas, and a Human Resources representative in August 2017 regarding complaints from Petitioner's coworkers about her behavior, which never happened and which Respondent never alleged.

The Utah Labor Commission wrongfully concluded the radiologist's dictation of an ultrasound report on a patient whom Petitioner did a scan on in June 2017. It was the radiologist who wrongfully dictated that the patient had a normal gallbladder even though Petitioner had correctly documented that the patient's gallbladder had been removed, which was the case.

The Utah Labor Commission completely ignored the fact that the decision to terminate Petitioner's employment by Mr. Hancock and Ms. St.Thomas on August 28, 2018 after they had discussed the sleeping incident of August 17, 2018 came first, and Ms. Pitre was asked by Ms. St.Thomas to document the incident on August 28, 2018 came second as Respondent testified. This retrospective order of action happened a week after Petitioner had reported to

the hospital COO, Mr. McKinley on August 23, 2018. This causal link and backward action were entirely disregarded by the Utah Labor Commission, which show the motive of retaliation and using the so-called sleeping incident as a pretext by Respondent after Petitioner reported to the higher authority of the hospital.

The Utah Labor Commission put all the weight on all Respondent's claims and presentations and testimonies and no weight on evidence or testimonies presented by Petitioner due to its prejudice and unfairness, even though Petitioner didn't have any inconsistency yet Respondent had many inconsistencies and proven false testimonies in hearing and in Affidavits.

The Utah Labor Commission disregarded the arguments by Petitioner on different accounts of the sleeping incident given by Ms. Pitre and the credibility of Ms. Pitre with Petitioner's proof that Ms. Pitre had given false testimony under oath.The Appeals Board of the Utah Labor Commission ruled in Respondent's favor to dismiss the case on January 19, 2022.

3). APPEAL TO UTAH COURT OF APPEALS

Acting upon the Notice of Appeal Rights given by Utah Labor Commission on Order Affirming ALJ'S Decision dated on January 19, 2022, Petitioner pursued to Utah Court of Appeals on February 17, 2022 to petition for reviewing the

case by listing all the errors and unfairness by Utah Labor Commission or

transferring the case to the district court for a new trial where Petitioner

could give her testimony on the accused sleeping incident, because Petitioner

just then recalled the so-called sleeping incident testified by Respondent in

hearing on the way to appeal to the Utah Court of Appeals ( around the end of

January to the beginning of February in 2022 ). On April 5, 2022, the Utah Court

of Appeals ruled " this court declines to disturb the Board's January 19, 2022

decision."  Then Petitioner filed Motion for Transferring the Case to

District Court with Utah Court of Appeals on April 20, 2022, since the court

record indicated that the case won't be closed until May 16, 2022. Respondent

filed Appellee's Response to Appellant's Motion for Transferring the Case to

District Court on May 4, 2022. ( Appendix M ). Yet  Utah Court of Appeals ruled

on May 10, 2022 "There is no provision in the Utah Rules of Appellate Procedure

contemplating the relief that Petitioner seeks in transferring her completed

administrative appeal to the district court for testimony." ( Appendix F ). Then

the REMITTITTUR was issued on May 20, 2022 stating Decision Issued: April 5,

2022. ( Appendix N).

4). PETITION WITH UTAH SUPREME COURT

Petitioner then filed Petition for Writ of Certiorari with Utah Supreme Court on June 8, 2022, reasoning that the Utah Court of Appeals had erred on the time the case was closed on April 5, 2022 and Petitioner still had legal right to file Rehearing or Motion after April 5, 2022 with Utah Court of Appeals. Respondent filed Respondent's Response to Petitioner's Petition for Writ of Certiorari on July 14, 2022, arguing that Petition for Writ of Certiorari was not filed timely and listed again all unfounded allegations. Petitioner argued in reply that the Petition for Writ of Certiorari was filed on time since (1). Utah Rule of Appellate Procedure 48(a). time for petitioning supported Petitioner's timely filing. Petitioner's filing on June 8, 2022 was consistent with the 30 days after the Utah Court of Appeals' final decision which was the ORDER on May 10, 2022 denying Petitioner's Motion for Transferring the Case to District Court. (2). The Utah Court of Appeals original record indicated that the case won't be closed until May 16, 2022. The original court's record cannot be changed any time with free will, otherwise the court itself has no law. (3). Respondent lawfully replied to Petitioner's Motion on May 4, 2022, which proves Respondent knew and agreed then the case was not closed on April 5, 2022 as Petitioner did. Regarding all the unfounded false allegations again by Respondent, Petitioner argued back on each one reasonably and truthfully by factual statements and

supporting documents. Not even one allegation by Respondent was true. But Utah Supreme Court ruled on August 15, 2022 to deny the Petition for Writ of Certiorari without any reason being given. ( Appendix E ).

## IX. REASONS FOR GRANTING THE WRIT

1). IT WAS RESPONDENT'S FAULT DUE TO ITS DISHONESTY AND INCONSISTENCY

Respondent's false and changing testimonies on the only incident which led to Petitioner's termination of employment caused that (A). Petitioner's prepared testimony on the so-called sleeping incident on August 17, 2018 based on Respondent's previously alleged version could not be given; (B).Petitioner could not react to the suddenly changed version of the incident in a short time because Petitioner could not remember the incident which had happened two years and eight months ago at the time of hearing.

2). PETITIONER'S TESTIMONY ON THE ACCUSED SLEEPING INCIDENT WOULD ULTIMATELY CHANGE THE OUTCOME OF THE CASE

Petitioner's testimony on that event will have significant influence on this case's outcome, because what Ms. Pitre testified in hearing was not the case. This will steer away from Respondent's falsely manufactured inconsistent testimonies along this legal proceeding.

3). CONSTITUTION GUARANTEES PETITIONER'S RIGHTS

V Amendment, VII Amendment, XIV Amendment and 42 United States Code Section 1983, all guarantee Petitioner's rights to testify for herself and also guarantee the fair due process. These are fundamental constitutional rights which cannot be taken away by the court system which is designated to execute the laws and protect people's rights.

4). THE FOLLOWING CASE LAWS ALL SUPPORT PETITIONER'S RIGHTS TO TESTIFY FOR HERSELF

(1). United States v. Gillenwater, 717 F. 3d 1070 ( 9th Cir. 2013)

The defendant was represented by counsel at a competency hearing. The attorney refused to call him to the stand and the defendant complained — disruptively – and was removed from the courtroom. The Ninth Circuit holds that a defendant has the constitutional right to testify at his competency hearing, even over the advice of counsel.

(2). United States v. Vargas, 920 F. 2d 167 ( 2d Cir.1990 )

Though declining the case on other grounds, the appellate court addressed the question of how a defendant should raise a claim that his attorney refused to call him to testify at trial. Without deciding the question, the court concludes that

the defendant's failure to complain at trial does not amount to a waiver of this claim that he was denied to the constitutional right to testify.

(3). Nichols v. Butler, 953 F. 2d 1550 ( 11th Cir. 1992 )

The defendant's attorney insisted that the defendant not testify in his own defense. The attorney threatened to withdraw if the client did testify. This violated the defendant's right to testify and required a new trial. The right to testify at trial cannot be forfeited by counsel, but only by a knowing , voluntary and intelligent waiver by the defendant himself. The right to testify in his own defense is a fundamental right. Rock v. Arkansas, 483 U.S.44 (1987). After hearing en banc, the decision was affirmed.

(4) Willner v. Committee on Character, 373 U.S.96 (1963).

This Court ruled that we hold that petitioner was denied procedural due process when he was denied admission to the Bar by the Appellate Division without a hearing on the charges filed against him before either the Committee or the Appellate Division.

5). THIS COURT HAS THE ULTIMATE AUTHORITY AND JURISDICTION TO GUARANTEE THE INTEGRITY OF THE CONSTITUTION AND DUE PROCESS AND PEOPLE'S RIGHTS

This Court has the ultimate authority and jurisdiction to exert power and wisdom and justice to guarantee the integrity of the constitution and due process and people's rights, which is by the people, of the people and for the people.

6). THIS CASE HAS NATIONAL IMPORTANCE

If Petition for Writ of Certiorari is denied, it will set a poor precedence for future cases to follow in which plaintiffs' and defendants' constitutional rights to testify for themselves can be deprived as Petitioner's right is deprived. This should never and can never happen to this great nation that is the lighthouse of the human kind to liberty and human rights.

## X. CONCLUSION

This Petition is about fundamental human rights granted by the Constitution which should be protected and guaranteed by the same Constitution. Petitioner's constitutional right to due process and the right to be heard cannot be taken away as they should be guarded by the Constitution. Petitioner demonstrated clear facts and cited absolutely suitable laws. Reasons are completely undeniable and wholly truthful. So Petitioner humbly and sincerely prays this Court grant to Petition for Writ of Certiorari.

Dated this 11th day of November, 2022.

Petitioner

/s/ Keming Lu

# IN THE SUPREME COURT OF THE UNITED STATES

No.

KEMING LU,

Petitioner,

V.

NORTHERN UTAH HEALTHCARE
CORPORATION D.B.A.
ST. MARK'S HOSPITAL

Respondent.

## CERTIFICATE OF COMPLIANCE

As required by Supreme Court Rule 33.1(h), I certify that the petition for a writ of certiorari contains 4685 words, excluding the parts of the petition that are exempted by Supreme Court Rule 33.1(d).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  November 11, 2022.

Keming Lu /Pro se
4531 So. Green Vista Court
Salt Lake City, Utah 84107
( 801) 205-4084
kemingxj@yahoo.com

**CERTIFICATE OF SERVICE**

I , Petitioner Keming Lu, hereby certify that on November 11, 2022, two true and correct copies of the attached PETITION FOR WRIT OF CERTIORARI were filed with Supreme Court of United States through first class certified mail with return receipt to the Clerk's Office, Supreme Court of the United States, One First Street, NE, Washington, DC 20543 and one correct copy of the same document was also mailed through first class certified mail with return receipt and emailed to the persons/parties at the following:

Mr. Nicholas Santucci
Ms. Kate Meade
Ms.Lisa Hogan, Utah Bar No. 16233
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO   80202-4432
Email:nsantucci@bhfs.com
        KMeade@bhfs.com
        lhogan@bhfs.com

Ms. Kirsten R. Allen, Utah Bar No. 15082
FABIAN VANCOTT
215 S. State Street, Suite 1200
Salt Lake City, UT 84111-2323
kallen@fabianvancott.com

Keming Lu
Petitioner

## APPENDIX. A

the term "confrontation" is undefined, ambiguous, and subject to multiple interpretations.

Subject to and without waiver of the foregoing objections, the Hospital responds as follows: On August 17, 2018, in the early afternoon, Ms. Pitre attempted to enter the ultrasound control room to retrieve documents, when she discovered that the two doors to the room were locked. After confirming that there were no patients in the rooms, Ms. Pitre unlocked the doors and found Petitioner sitting in the corner of the room, asleep, with her arms crossed and her head bowed. As Ms. Pitre entered the room, Petitioner awoke and stared at Ms. Pitre. Ms. Pitre told Petitioner that she was not allowed to keep the doors locked. Petitioner responded that she had been taking naps on the job for years and no one ever said anything. At that point, Ms. Pitre retrieved the documents she needed and left the control room.

**MS. NATOSHA DAVIS**

**INTERROGATORY NO. 3:** Why didn't you apologize to Petitioner when Petitioner told you right after the July 27, 2018 meeting in the conference room with Ms.Jillian Petri and you and Petitioner then later you knew for yourself that the twenty minutes you had claimed Petitioner should have to do the L&D patient in that meeting was wrong because you presented in the meeting the previous patient's beginning time as the ending time?

**RESPONSE**: The Hospital objects to Interrogatory No. 3 because it is incomprehensible as written. The discovery request, as phrased, is argumentative. Specifically, it requires the adoption of an assumption, which is improper. Moreover, the phrase "previous patient's beginning time as the ending time" is undefined, vague, ambiguous, and subject to multiple interpretations.

Subject to and without waiver of the objections, the Hospital responds as follows: Notwithstanding that Interrogatory No. 3 does not pose a clear inquiry upon the Hospital,

4

## APPENDIX. B

Attorney Ms.Hogan: Do you recall , I am going to draw your intention to August 17th, it's been the day we discussed much about an incident where you allegedly found Ms. Lu sleeping in the control room. Can you please tell the judge that day what you observed?

Ms. Pitre: Yes. so, It was a Friday. So I wanted to get payroll all completed. I did around the department, picked up all of the payroll books. And I couldn't get into ultrasound, both doors were locked. There are center cores set between these doors. So I just continued to bound the different books and went back did all the payroll, which takes quite some time, and went back, drop off the books and in hopes to get ultrasound's book too, take theirs back, both doors were still locked. I have known that earlier in that day I sent Tina home because they really didn't have very heavy schedule, only one tech can handle it. So I went back to my office again put up our EPIC sheet. Our EPIC computer screen shows, ok, what patients we have in the ER, what patients we have in the outpatients, there wasn't any patients on at all. So, I went back and unlocked the door. Ultrasound rooms lights were completely off. In the center core, the lights were on,Keming was sitting in the center core. I said the doors need to remain unlocked. And I grabbed the book, there was no conversation at that point.

Attorney Ms. Hogan: Did you see Ms. Lu again that day?

Ms. Pitre: I did. I went to my office and I did ultrasound's payroll. When I came back, the door wasn't locked but sitting in the corner of center core, Keming was sitting there with her arms crossed and her head down. I got all the way to the center core to tell, her eyes were closed, she was sleeping to the point where I put the book in the wall holder to make the noise to wake her up.

APPENDIX. C

**Exhibit L**

# Disciplinary/Corrective Action Form

| Employee Information | | | | |
|---|---|---|---|---|
| Lu<br>FIRST NAME | Keming<br>LAST NAME | PFG1378<br>3 / 4 ID | Ultrasound Tech<br>JOB TITLE | 7/28/1997<br>DATE OF HIRE |
| Tonna St Thomas<br>REPORTING MANAGER | | St Marks Hospital<br>BUSINESS ENTITY | Ultrasoun d<br>DEPT | Dir Diagnostic Imaging<br>REPORTING MGR'S JOB TITLE |

## Disciplinary / Corrective Action

**CATEGORY OF DISCIPLINARY ACTION** (select all that apply):

☐ CONDUCT/BEHAVIOR  ☐ PERFORMANCE  ☐ ATTENDANCE  ☒ POLICY VIOLATION  ☐ ETHICS
☐ LICENSE/CERTIFICATION  ☐ PATIENT SAFETY  ☐ MEDICATION ERRORS  ☐ PHYSICIAN COMPLAINT

**LEVEL OF DISCIPLINARY ACTION**

☐ VERBAL  ☐ WRITTEN  ☐ FINAL WRITTEN  ☒ TERMINATION

Written Warning – 8/3/2018
DATE(S) & LEVEL OF PRIOR RELATED
DISCIPLINARY ACTION

☐ SUSPENSION (if applicable):

FROM _____ TO _____

**DETAILED SUMMARY OF OFFENSE(S) LEADING TO THIS ACTION:**

On August 17, 2018 Keming was observed sleeping in the control room while on duty.  This constitutes a serious violation of policy.

**REQUIRED CORRECTIVE ACTION AND EXPECTATIONS GOING FORWARD:**

Termination of employment.

**NEXT STEPS IF THE EMPLOYEE DOES NOT MEET THE REQUIRED IMPROVEMENTS/EXPECTATIONS:**

N/A

**EMPLOYEE COMMENTS:** _This is a discrimination which I mentioned before. They don't correct their actions but to deminate me. There will be justice in Heaven when I meet you all who ___ ___ ___ again_

## Signatures

**EMPLOYEE ACKNOWLEDGEMENT:** _I have read this document and have been given an opportunity to comment. My signature below acknowledges receipt of a copy of this document and does not imply agreement unless otherwise indicated. I understand that further disciplinary action may lead to termination of employment._

_Will be justified. They lied and discriminated me. but I'll forgive you all, because I will show you all my true heart._

| _____ | 8/30/2018 | Tonna St Thomas | |
|---|---|---|---|
| EMPLOYEE SIGNATURE | DATE | REPORTING MANAGER SIGNATURE | DATE<br>8/30/18 |

☐  Employee elected to not sign this Disciplinary/Corrective Action Form

rev. 11/14/2014

HR: _____  8/30/18

HR.ER.008a

## APPENDIX. D

Petitioner:      That's the only reason I am fired based on that? the only reason?

Mr. Hancock:     Yeah !

Petitioner:      Yeah, ok, you said ok, only reason. So, you just told me that is the solo

                 reason I have been fired.

Mr. Hancock:     Correct !

petitioner:      So, there is nothing to do with the prior incidents that they reported.

Mr.Hancock:      No.

Petitioner:      Ok

Mr.Hancock:      Yeah.

Petitioner:      Ok.

Mr. Hancock:     Ok.

Petitioner:      That means your guys did something wrong with that two incidents because

                 that's not what I based on, you know, the firing is not based on that two facts.

Mr. Hancock:     Well, we are not saying that's really your termination.

APPENDIX. E

The Order of the Court is stated below:
**Dated:** August 15, 2022      /s/  John A. Pearce
07:21:27 AM            Justice

## IN THE SUPREME COURT OF THE STATE OF UTAH

----ooOoo----

| | |
|---|---|
| Keming Lu,<br>Petitioner,<br>v.<br>Labor Commission and Northern Utah Healthcare<br>Corporation D.B.A. St. Marks Hospital,<br>Respondents. | ORDER<br><br>Supreme Court No. 20220539-SC<br><br>Court of Appeals No. 20220188-CA<br><br>Trial Court No. 8090160 |

----ooOoo----

This matter is before the Court upon a Petition for Writ of Certiorari, filed on June 8, 2022.

IT IS HEREBY ORDERED that the Petition for Writ of Certiorari is denied.

**End of Order - Signature at the Top of the First Page**

APPENDIX. F

**FILED**
**UTAH APPELLATE COURTS**

**MAY 10 2022**

## IN THE UTAH COURT OF APPEALS

| | |
|---|---|
| KEMING LU,<br>Petitioner,<br>*v.*<br>UTAH LABOR COMMISSION, AND NORTHERN<br>UTAH HEALTHCARE CORPORATION D/B/A ST.<br>MARKS HOSPITAL<br>Respondents. | ORDER<br><br>Case No. 20220188-CA |

This matter is before the court on Petitioner's Pro Se Motion for Transferring the Case to the District Court.

Petitioner sought judicial review of the Appeals Board of the Utah Labor Commission's January 19, 2022 decision. On April 5, 2022, this court issued an Order of Summary Affirmance declining to disturb the Board's decision.

Petitioner now requests that this court transfer the appeal to the district court so that the district court may take testimony. Petitioner's motion is not well taken. There is no provision in the Utah Rules of Appellate Procedure contemplating the relief that Petitioner seeks in transferring her completed administrative appeal to the district court for testimony.

Accordingly, IT IS HEREBY ORDERED that Petitioner's Motion for Transferring the Case to the District Court is denied.

DATED this __10th__ day of May, 2022.

FOR THE COURT:


Michele M. Christiansen Forster, Judge

**Exhibit I 1**

APPENDIX. G

 iTalkBB  LTE          4:36 PM                    62% 🔋



**Tosha** ›

Fri, Aug 3  9:51 AM

> Tosha, it has been a week since I requested a meeting with you and Jill again to tell you both what I found ,which was (were) different than you and Jill presented in the first meeting on July 27 . But I haven't heard from you about what time we can meet again . Do you have a timeline? Thank you!

                               

      

APPENDIX. G

**Exhibit I 2**



**Tosha ›**

Fri, Aug 3, 10:59 AM

**im not back until next week n then im working overnights.  at this point we r waiting for jill. speak with her on friday or u can  wait until next friday when im back to days.**

Fri, Aug 3, 1:44 PM

I just need to talk to you both at the same time so there will be no confusion. I can wait till next Friday. But i don't

**Tosha** ›

Exhibit I 3

I just need to talk to you both at the same time so there will be no confusion. I can wait till next Friday. But i don't know if she will be available or not. Do you want me to contact her or just want indefinitely

ill text her to keep a space open for us next friday

Thank you! Tosha!

np

Exhibit. F1

## APPENDIX. H

**Pitre Jillian - Salt Lake City**

| | |
|---|---|
| **From:** | Stthomas Tonna |
| **Sent:** | Wednesday, August 15, 2018 1:28 PM |
| **To:** | Pitre Jillian - Salt Lake City; Lu Keming |
| **Cc:** | Davis Natosha; Hancock Jon; Swartz Valerie |
| **Subject:** | RE: Requesting documents |

At this time Keming we are done with this issue.
You have met with H.R. and talked about your issues.

We need to stop the e-mails and focus on our work and our excellent patient care.

Thank you
Tonna St Thomas
Director of Radiology
St Marks Hospital

> **From: Pitre Jillian - Salt Lake City**
> **Sent: Wednesday, August 15, 2018 1:25 PM**
> **To: Lu Keming** <Keming.Lu@Mountainstarhealth.com>
> **Cc:** Stthomas Tonna <Tonna.Stthomas@HCAhealthcare.com>; Davis Natosha
> <Natosha.Davis@Mountainstarhealth.com>; Hancock Jon <Jon.Hancock@hcahealthcare.com>; Swartz Valerie
> <Valerie.Swartz@Mountainstarhealth.com>
> **Subject: RE: Requesting documents**
>
> Keming,
>
> **Attached is the write up that has both of your requests.**
>
>> **From: Lu Keming**
>> **Sent: Wednesday, August 15, 2018 10:24 AM**
>> **To: Pitre Jillian - Salt Lake City** <Jillian.Pitre@Mountainstarhealth.com>
>> **Subject: Requesting documents**
>>
>> Jill: I was surprised that you had submitted your writing-up of me to human resources already before I
>> represented my entire case before you and Tosha. It was a violation of basic rights as an employee. I will
>> make a petition to get it back and report your violation to an appropriate authority. But now I want to
>> see what you wrote and what you said about the whole incident. I am requesting the copy of the write-
>> up, so I would know what you said about me behind my back.
>>        Thank you if you could meet my request !
>> Keming
>>
>>
>> Second request
>>
>> Jill: This is the second request for the write-up you wrote about me on the incident which happened
>> before this recent one. I also want to see what you said and what you wrote. Though that was dismissed

1

at the meeting but you put it back into my file illegally to convict me wrong doing. Do you know that if a policeman did something illegal to obtained the evidence , that evidence cannot be used in court to against the suspect, much less that I was innocent. So I will make a petition to take that back too and make a report to an appropriate authority on your illegal action against me.

Thank you if you can let me have this copy too.

Keming

2

STM0000058

APPENDIX. I

# Disciplinary/Corrective Action Form

## Employee Information

| Keming | Lu | PFG1378 | US tech | |
|---|---|---|---|---|
| FIRST NAME | LAST NAME | 3 / 4 ID | JOB TITLE | DATE OF HIRE |

| Tonna St Thomas | | | 729 | Director of Imaging |
|---|---|---|---|---|
| REPORTING MANAGER | | BUSINESS ENTITY | DEPT | REPORTING MGR'S JOB TITLE |

## Disciplinary / Corrective Action

**CATEGORY OF DISCIPLINARY ACTION** *(select all that apply):*
☐ CONDUCT/BEHAVIOR  ☒ PERFORMANCE  ☐ ATTENDANCE  ☐ POLICY VIOLATION  ☐ ETHICS
☐ LICENSE/CERTIFICATION  ☒ PATIENT SAFETY  ☐ MEDICATION ERRORS  ☐ PHYSICIAN COMPLAINT

**LEVEL OF DISCIPLINARY ACTION**
☐ VERBAL  ☒ WRITTEN  ☐ FINAL WRITTEN  ☐ TERMINATION

DATE(S) & LEVEL OF PRIOR RELATED
DISCIPLINARY ACTION

☐ SUSPENSION *(if applicable)*:

FROM                    TO

**DETAILED SUMMARY OF OFFENSE(S) LEADING TO THIS ACTION:**
Over the past three months, Keming received multiple complaints from patients as well as departments in the hospital. These complaints have demonstrated a pattern of poor communication that has caused delays in needed patient care being provided. (see attached emails)

**REQUIRED CORRECTIVE ACTION AND EXPECTATIONS GOING FORWARD:**
Keming needs to communicate properly with the other departments and take care of her patients in a timely matter.

**NEXT STEPS IF THE EMPLOYEE DOES NOT MEET THE REQUIRED IMPROVEMENTS/EXPECTATIONS:**
Failure to demonstrate immediate, significant and sustained improvement will result in additional disciplinary action, up to and possibility including termination of employment.

**EMPLOYEE COMMENTS:**

## Signatures

**EMPLOYEE ACKNOWLEDGEMENT:** *I have read this document and have been given an opportunity to comment. My signature below acknowledges receipt of a copy of this document and does not imply agreement unless otherwise indicated. I understand that further disciplinary action may lead to termination of employment.*

rev. 11/14/2014                                                    HR.ER.008a

APPENDIX. I

**Exhibit K3**

**EMPLOYEE SIGNATURE**          **DATE**          **REPORTING MANAGER SIGNATURE**          **DATE**
☒ Employee elected to not sign this Disciplinary/Corrective Action Form

\*keming has requested another meeting
this coming Friday

[2]

APPENDIX. J

**ORDER AFFIRMING ALJ'S DECISION
KEMING LU
PAGE 2 OF 9**

## FINDINGS OF FACT

The Appeals Board finds the following facts to be material to Ms. Lu's motion for review. Ms. Lu is of Asian descent worked for the hospital for about 21 years. She worked as an ultrasound technologist in the hospital's radiology department. Tonna St. Thomas was the director of the radiology department. Jillian Pitre was a manager in the radiology department and Natosha Davis was the ultrasound coordinator

In August 2017, Ms. Lu met with Ms. Pitre, Ms. St. Thomas, and a human resources representative regarding complaints from Ms. Lu's coworkers about her behavior. Specifically, the complaints discussed related to Ms. Lu taking lunch breaks that caused coworkers to miss their own lunch breaks, Ms. Lu "not pulling her weight" in performing patient ultrasounds, Ms. Lu passing off patients to coworkers, and Ms. Lu leaving ultrasound scanners on the floor. Ms. Lu denied the accusations and asserted that her behavior had not adversely affected her coworkers.

In May 2018, Ms. Lu was accused of leaving a patient in a hallway after telling the patient she would have to wait for another ultrasound technologist because Ms. Lu's shift had ended. Ms. Pitre and Ms. Davis met with Ms. Lu about the incident, at which time Ms. Lu asserted that she was being treated differently on account of her race. Later in May 2018, Ms. Lu was accused of delaying care to a patient while requesting to see the patient's driver's license. Ms. Lu explained that she was following the hospital's policy of confirming the patient's name and that the patient did not complain of discomfort.

On July 27, 2018, Ms. Lu met with Ms. Pitre and Ms. Davis regarding a complaint about Ms. Lu making a patient wait over two hours to be scanned. Ms. Lu described that she was admonished for the behavior, but Ms. Pitre and Ms. Davis refused to believe anything she said. Ms. St. Thomas issued Ms. Lu a written reprimand indicating that Ms. Lu had been the subject of multiple complaints from patients and departments in the hospital over the past three months. The reprimand was signed by Ms. St. Thomas on August 3, 2018. Ms. Lu met with Ms. Pitre and Ms. Davis on August 10, 2018, regarding the reprimand and complained of discrimination and harassment based on her race.

On August 17, 2018, Ms. Pitre found Ms. Lu resting in a room at the hospital during her shift. Ms. Pitre asserts that the door to the room was locked, so she checked whether an ultrasound was being performed. Ms. Pitre determined that no patients were scheduled to be seen in that room and unlocked the door to find Ms. Lu seated in the corner of the room by herself. Ms. Pitre testified that she instructed Ms. Lu that the door was to remain unlocked. Ms. Pitre explained that she returned to the room a short time later and found Ms. Lu asleep. Ms. Lu contends that she was not actually asleep, but had closed her eyes for a short period of time.

Hospital management discussed Ms. Lu's behavior following the August 17, 2018, incident and in light of previous disciplinary action against her. Ms. St. Thomas eventually decided to

## APPENDIX. K

Attorney Ms. Hogan:  You remember issuing a written warning to Ms. Lu?

Ms. Pitre:  I do at one point.

Attorney Ms. Hogan:  Well, we'll pull up Exhibit 7.

Ms. Pitre:  Ok. Yes.

Attorney Ms. Hogan: I just want to be clear, you received this email from Ms. St. Thomas on

> July 25th, and then we have this disciplinary corrective action form on
>
> August 3.

Ms. Pitre:  Correct.

Attorney Ms. Hogan:  So, tell us about this. How did you prepare this? What prompted you to
> prepare this?

Ms. Pitre:  So the first concerns we looked more as it was just going to be a coaching moment,
> there was no disciplinary. By the second, just the pattern of it, I felt like we need to
> get at least acknowledged on paper, that there is a concern that this pattern is
> happening. I just wanted to document that, let's get it on paper, all recognize that we
> have multiple complaints coming in and move forward from that point.

Attorney Ms.Hogan: So, what prompted you then to prepare this disciplinary corrective, oh
> excuse me, let me ask you this. What did you do to prepare this ? Did you
> work with anybody else to prepare this corrective action?

Ms. Pitre:  Tosha and I prepared it for a meeting.

Attorney Ms.Hogan: Do you remember......

Petitioner interrupted to ask a question: I'm sorry, who? Tosha? Tosha and you? I'm sorry !

Attorney Ms. Hogan:  Yes.

Petitioner:  Ok.

Attorney Ms. Hogan: There have been some testimony about Mr. Hancock running this out and

> see that it didn't have your signature on that?  Do you remember that?
Ms.Pitre:    I do.

1

## APPENDIX. K

Attorney Ms. Hogan: What is your explanation for that?

Ms. Pitre: So, when we had the initial disciplinary action, Keming didn't want to sign it, she
wanted additional meeting. So, she was, she left. Then I was told I still need to turn
this one in, that's I did sign it and wrote that she had requested another meeting.
Once the meeting was scheduled, I wrote when that was.

Attorney Ms. Hogan: Ok, all right.

Petitioner: Excuse me, I'll interrupt you, make sure I understand it. You said you signed it on
the same day, the August 3, because I declined to sign it, but you need to turn in the
paper, so you signed it and turned the paper in.

Ms. Pitre: Yeah.

Petitioner: Is that what you are saying?

Ms. Pitre: Yeah.

Petitioner: That would be on the same day, August 3, you signed it.

The Judge: Ok, Ms. Lu, can you ask ( her ) if you understood the question correctly, but you
can't ask additional questions after that.

Petitioner: oh, ok, ok. Thank you, Your Honor !

Attorney Ms. Hogan: Ms. Pitre, did you and Ms. Davis meet with Ms. Lu on about August 3 ?

Ms. Pitre: Yes !

Attorney Ms. Hogan: What do you recall from that meeting ?

Ms. Pitre: I do know when we discussed all of the different complaints, Keming still didn't feel
like she had any wrong doing in it, she didn't have any ownership or accountability.
So, that's why she requested another meeting, and with HR as well. She didn't want
to accept the complaints from the other department.

Attorney Ms. Hogan: Do you recall approximately how long that meeting was?

Ms. Pitre: About an hour.

2

**Exhibit K2**

APPENDIX. L

# Disciplinary/Corrective Action Form

| Employee Information | | | | | |
|---|---|---|---|---|---|

**Keming** | **Lu** | PFG1378 | **US tech** | |
FIRST NAME | LAST NAME | 3 / 4 ID | JOB TITLE | DATE OF HIRE

**Tonna St Thomas** | | | **729** | **Director of Imaging**
REPORTING MANAGER | BUSINESS ENTITY | | DEPT | REPORTING MGR'S JOB TITLE

## Disciplinary / Corrective Action

**CATEGORY OF DISCIPLINARY ACTION** *(select all that apply):*

☐ CONDUCT/BEHAVIOR  ☒ PERFORMANCE  ☐ ATTENDANCE  ☐ POLICY VIOLATION  ☐ ETHICS
☐ LICENSE/CERTIFICATION  ☒ PATIENT SAFETY  ☐ MEDICATION ERRORS  ☐ PHYSICIAN COMPLAINT

**LEVEL OF DISCIPLINARY ACTION**

☐ VERBAL  ☒ WRITTEN  ☐ FINAL WRITTEN  ☐ TERMINATION

DATE(S) & LEVEL OF PRIOR RELATED
DISCIPLINARY ACTION

☐ SUSPENSION *(if applicable):*

FROM           TO

**DETAILED SUMMARY OF OFFENSE(S) LEADING TO THIS ACTION:**

Over the past three months, Keming received multiple complaints from patients as well as departments in the hospital. These complaints have demonstrated a pattern of poor communication that has caused delays in needed patient care being provided. (see attached emails)

**REQUIRED CORRECTIVE ACTION AND EXPECTATIONS GOING FORWARD:**

Keming needs to communicate properly with the other departments and take care of her patients in a timely matter.

**NEXT STEPS IF THE EMPLOYEE DOES NOT MEET THE REQUIRED IMPROVEMENTS/EXPECTATIONS:**

Failure to demonstrate immediate, significant and sustained improvement will result in additional disciplinary action, up to and possibility including termination of employment.

**EMPLOYEE COMMENTS:** _____

_____

_____

| Signatures | |
|---|---|

**EMPLOYEE ACKNOWLEDGEMENT:** *I have read this document and have been given an opportunity to comment. My signature below acknowledges receipt of a copy of this document and does not imply agreement unless otherwise indicated. I understand that further disciplinary action may lead to termination of employment.*

_____     _Jill Pike_     8/3/18

rev. 11/14/2014                                HR.ER.008a

**EMPLOYEE SIGNATURE**          **DATE**          **REPORTING MANAGER SIGNATURE**          **DATE**
☒ Employee elected to not sign this Disciplinary/Corrective Action Form

\*Keming has requested another meeting
this coming Friday — 8/10  1 30p.

[2]

## APPENDIX. M

Lisa Hogan, Utah Bar No. 16233
Nicholas R. Santucci, Admitted *Pro Hac Vice*
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street
Suite 2200
Denver, CO 80202-4432
Telephone: (303) 223-1100
Fax: (303) 223-1111
Email: lhogan@bhfs.com
nsantucci@bhfs.com

Kirsten R. Allen (15082)
FABIAN VANCOTT
215 South State Street, Suite 1200
Salt Lake City, UT 84111
Telephone: (801) 531-8900
Facsimile: (801) 596-2814
kallen@fabianvancott.com

*Attorneys for Appellee*
*Northern Utah Healthcare Corporation d/b/a St. Mark's Hospital*

## IN THE UTAH COURT OF APPEALS

| KEMING LU, an Individual | **APPELLEE'S RESPONSE TO** |
|---|---|
| Appellant, | **APPELLANT'S MOTION FOR** |
| vs. | **TRANSFERRING THE CASE TO** |
| | **DISTRICT COURT** |
| LABOR COMMISSION AND | |
| NORTHERN UTAH HEALTHCARE | Appellate Case No. 20220188-CA |
| CORPORATION D.B.A. ST. MARKS | Trial Case No. 8090160 |
| HOSPITAL, | |
| Appellee. | |

Appellee Northern Utah Healthcare Corporation d/b/a St. Mark's Hospital

("Appellee" or the Hospital"), hereby submits its response to Appellant Keming Lu's

1

## APPENDIX. M

("Appellant") Motion for Transferring the Case to District Court ("Motion") and states as follows:

The Hospital stands on the thorough record from the two-day evidentiary hearing that was held on April 29 and 30, 2021, wherein approximately 12 hours of witness testimony was presented, that has now withstood all levels of appeal permitted.

It is unclear which relief Appellant seeks in her Motion or under what rule(s) but if the Court requires any further response from Appellee, or if the Court believes it would be aided by a supplemental response from Appellee with substantive legal authority, Appellee requests leaves to so respond.

### CONCLUSION

Therefore, Appellee respectfully requests that the Court deny the Motion.

DATED this 4th day of May, 2022

*s/Lisa Hogan*
Lisa Hogan, Utah Bar No. 16233
Nicholas R. Santucci, Admitted *Pro Hac Vice*
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Telephone: (303) 223-1100
Fax: (303) 223-1111
Email: lhogan@bhfs.com
nsantucci@bhfs.com

Kirsten R. Allen, Utah Bar No. 15082
FABIAN VANCOTT
215 S. State Street, Suite 1200
Salt Lake City, UT 84111-2323
Telephone: (801) 531-8900

2

## APPENDIX. M

Fax: (801) 596-2814
Email: kallen@fabianvancott.com

*Attorneys for Appellee*

**APPENDIX. N**

**FILED**
**UTAH APPELLATE COURTS**

**MAY 20 2022**

## IN THE UTAH COURT OF APPEALS

----ooOoo----

| | |
|---|---|
| KEMING LU, <br> Petitioner, <br> *v.* <br> LABOR COMMISSION AND, <br> NORTHERN UTAH HEALTHCARE <br> CORPORATION D.B.A. <br> ST. MARKS HOSPITAL, <br> Respondents. | REMITTITUR <br><br> Appellate Case No. 20220188-CA <br><br> LABOR COMMISSION <br> Trial Court Case No.: 8090160 |

The above-entitled case was submitted to the court for decision and the decision has been issued.

Decision Issued: April 5, 2022

Notice of Remittitur Issued: May 20, 2022

*Lisa A. Collins*

Lisa A. Collins
Clerk of Court

By: *Alexis Ney*

Alexis Ney
Judicial Assistant

Date: __May 20, 2022__